## GUNNISON GAS & WATER CO. v. WHITAKER et al.

(Circuit Court, E. D. Missouri, E. D. December 31, 1898.)

### No. 4,096.

1. CORPORATIONS — REPUDIATION OF CONTRACT ULTRA VIRES — STANDING IN EQUITY.

A quasi public corporation, like a water company, which has, in violation of statute and ultra vires, issued bonds, which it has distributed among its stockholders without consideration, is not estopped, on the ground that it is in pari delicto, from maintaining a suit in equity to restrain the enforcement of such bonds, and to compel their surrender for cancellation, where they are still in the hands of the stockholders, and the fraudulent scheme is, therefore, practically still executory.

2. EQUITY—LACHES—INJUNCTION AGAINST ENFORCEMENT OF VOID OBLIGATION.

A corporation which has issued bonds secured by a mortgage on its property, both of which were illegal and ultra vires, is not guilty of laches which will defeat its right to an injunction against the foreclosure of the mortgage, because of a delay in bringing suit, where its possession of its property had never been interfered with, and no rights under the void obligations had ever been asserted, until immediately prior to the commencement of the suit.

This is a suit in equity to enjoin the foreclosure of a mortgage, and compel the surrender for cancellation of certain bonds issued by plaintiff. On demurrer to bill.

Dickson & Smith and E. S. Robert, for complainant.
Pollard & Werner, for defendants.

ADAMS, District Judge. This is a bill in equity, averring, in substance and effect, that the complainant, a corporation organized and existing under and pursuant to the laws of Colorado, soon after its incorporation assessed against its shareholders, among whom were defendants Whitaker and Matthews, 80 per cent. of their stock subscriptions; that this amount was paid in, and with it the complainant, in the year 1882, fully constructed and paid for the water and gas works, for the construction and operation of which it had been incorporated; that after the completion of this work a meeting of the stockholders was held, and a pretended contract authorized and subsequently executed by the officers of the corporation, by the provisions of which defendant Whitaker was pretended to be employed to construct the water and gas plants (already constructed and paid for), and the company agreed to duly authorize and issue its certain 150 bonds, each for the sum of $1,000, payable 19 years after date, with interest at the rate of 7 per cent. per annum, and to secure the payment thereof by a first mortgage or deed of trust upon its water and gas works, and to deliver 125 thereof to said Whitaker as a pretended payment for his work and labor to be done and materials to be furnished in the imaginary construction of the already completed water and gas works. It is further alleged in the bill that the real purpose of authorizing this issue of bonds was to raise money to reimburse the shareholders for the 80 per cent. originally paid by them on their stock subscriptions; that to accomplish this purpose the complainant, in the year 1882, duly execut-

·ed such bonds and deed of trust, and delivered the entire issue of bonds ($150,000) ·to defendants Whitaker and Matthews, to be sold by them, in order to raise money for the aforesaid purpose; that the said Whitaker and Matthews were unable to make sale of the bonds, and thereafter, without authority from the complainant, made an arbitrary distribution of all of said bonds, except 24, among certain of the complainant's shareholders; that the 24 bonds not distributed were returned, to the complainant. The bill further shows that heretofore, upon the demand of the complainant, all of the bonds so arbitrarily distributed have been returned to complainant for cancellation, except 20 of them, which, it is alleged, have been retained by the said defendants Whitaker and Matthews, without any authority or right; that the deed of trust, executed simultaneously with the execution of said bonds, conveyed to the defendant William Nichols, as trustee, all the property of the gas and water company, to be held by him, and sold, if necessary, to pay the interest and principal of said bonds as the same respectively matured; that said Nichols, at the request of the defendants Whitaker and Matthews, has now advertised and is about to sell said property, under the provisions of the deed of trust, because of default on the part of the complainant. in the payment of interest matured upon the 20 bonds now held by the defendants Whitaker and Matthews. The prayer of the bill is for an injunction against defendant Nichols, restraining him from selling the property conveyed to him by said deed of trust, on the ground that such sale will cast a cloud upon the complainant's title, and for a decretal order requiring defendants Whitaker and Matthews to surrender up the 20 bonds now held by them to the complainant for cancellation.

To this bill a demurrer is interposed on two grounds: (1) That there is no equity in the bill, for the reason that the parties, complainant and defendants, are equally guilty,—in other words, that complainant has not come into a court of equity with clean hands; (2) that complainant's right to equitable relief is barred by laches.

The scheme set out in the bill is one, often resorted to by promoters of corporations, to issue and negotiate securities in excess of corporate values, and thus appear to have a greater investment of money in a given enterprise than the facts justify. Such a scheme, independent of statute, is deceptive in its character, against good public policy, and often leads, in public or quasi public corporations, and for that matter in many strictly private corporations, to exacting excessive and unreasonable charges and tolls from the public, supposed to be made necessary to pay dividends upon the outstanding securities. It is a practice I regard as a growing evil, prejudicial alike to the public and to the best interests of corporate shareholders. This view is not only the dictate of common business honesty, but in many states, and especially in the state of Colorado, now particularly concerned, is enforced by constitutional and legislative inhibitions.

Section 9 of article 15 of the constitution of Colorado ordains as follows:

"No corporation shall issue stocks or bonds except for labor done and services performed or money or property actually received, and all fictitious increase of stock or indebtedness shall be void."

This constitutional provision has been re-enforced by legislative prohibitions to the same effect. Mills' Ann. St. Colo. § 618.

The scheme, therefore, devised by the stockholders of the Gunnison Gas & Water Company to increase its apparent liabilities by issuing $150,000 in bonds, in the way and manner and for the purposes already stated, was in excess of corporate power, unlawful, and void. The case shows that all of these bonds but 20 have been returned to the complainant for cancellation. The remaining 20 bonds are not in the hands of innocent purchasers for value, as is usually the case, but in the hands of the defendants, who are alleged to hold them with full knowledge of their illegality, and without any authority or right. They ought, therefore, to be returned to the complainant for cancellation, and the defendant Nichols ought to be enjoined from exercising his supposed powers as trustee in the deed of trust executed to secure the payment of these bonds, unless some insuperable rule of equity has supervened to prevent it.

It is urged that complainant corporation, being nothing, in fact, but an aggregation of stockholders, who participated in the fraudulent scheme, stands in pari delicto with the defendants, and therefore cannot invoke a court of conscience to aid in extricating itself from its dilemma. In considering this contention, it must be borne in mind that the act complained of by complainant, and under which defendants justify their conduct, was in excess of the power conferred upon the complainant corporation. It was ultra vires, and by the express provisions of the constitution and statutes of Colorado absolutely void. Such being the case, no consent or ratification of the stockholders can avail to vitalize it. Not only so, but the complainant is a quasi public corporation, owing duties and under obligations to the public, which it has undertaken as a consideration for the franchise granted to it. It must, therefore, so conduct itself as to be able to discharge these obligations. Conceding, then, that the complainant, with the acquiescence of all its stockholders at the time, entered into this illegal scheme to inflate its securities, it does not follow that no locus pœnitentiæ is open to it, and that the courts will not aid it in extricating itself. The interests of the public, to say nothing of the rights of its changing stockholders, in my opinion, impose a duty upon the corporation at any and all times to resist the execution of the unlawful scheme.

In this connection it is proper to say that the scheme under consideration stands now, as it did in 1882, practically unexecuted. In other words, we are not now dealing with an alleged fraudulent scheme which has been partially executed by the original participants. So far as the bill discloses the facts, the purpose sought to be accomplished by the parties to the scheme in question, in 1882, still remains unexecuted, and nothing has been done by way of execution thereof, or asserting any rights thereunder, adverse to the complainant, until the defendants in this case took the steps averred in the petition to secure the sale of the mortgaged property for the purpose of compelling the payment of the 20 bonds held by them.

In the leading case of Central Transp. Co. v. Pullman's Palace-Car Co., 139 U. S., at page 55, 11 Sup. Ct. 486, Mr. Justice Gray, speaking

for the court in a case similar in some of its aspects to that at bar, says:

"In Thomas v. Railroad Co., 101 U. S. 71, Mr. Justice Miller, while admitting in general terms that in many instances where an invalid contract, which the party to it might have avoided or refused to perform, has been fully performed on both sides, whereby money has been paid or property changed hands, the courts have refused to sustain an action for the property or the money so transferred, and that the executed dealings of corporations must be allowed to stand for and against both parties when the plainest rules of good faith require it, yet in the same connection, and in the most emphatic words, said that in the case before the court, of a contract forbidden by public policy and beyond the powers of the defendant corporation, it was its legal duty, a duty both to its stockholders and to the public, to rescind and abandon the contract at the earliest moment, and the performance of that duty, though delayed for several years, was a rightful act when done, and could give the other party no right of action, and that to hold otherwise would be to hold that any act performed in executing a void contract makes all its parts valid, and that the more that is done under a contract that is forbidden by law the stronger is the claim to its enforcement by the courts."

In the case of McCutcheon v. Capsule Co., 19 C. C. A. 108, 71 Fed. 787, where the complainant corporation was seeking an injunction against the enforcement of an unexecuted, illegal contract entered into by it, the circuit court of appeals for the Sixth circuit, answering the same objection that is now made by the defendants in this case, says:

"To hold that the complainant is estopped to rely upon the illegality of the agreement and conveyance to which it was a party would be to effectuate an unexecuted, unlawful object, and aid in the defeat of a legal prohibition. The door of this court should not be closed against one seeking to extricate himself from an unlawful connection, provided relief is sought without delay, and before the contract is executed or other persons have irrevocably acted in reliance upon its supposed legality."

In the case of St. Louis, V. & T. H. R. Co. v. Terre Haute & I. R. Co., 145 U. S. 407, 12 Sup. Ct. 953, it is held, in effect, that where an illegal contract remains executory the courts may relieve against it, even though the parties are in pari delicto. Mr. Pomeroy, in his work on Equity Jurisprudence (volume 2, 2d Ed., § 940), lays down the same rule, and gives very excellent reasons in its justification.

The next and only other ground of the demurrer is that the complainant's remedy is barred by laches. In considering this question it should be borne in mind that, according to the averments of the bill, the first and only claim of right ever asserted under the deed of trust and bonds in question is this now asserted by the defendants in their attempt to secure a sale of the complainant's property under the deed of trust. According to the averments of the bill, the bonds are void, and known to be so by all the shareholders, including the defendants Whitaker and Matthews. All the shareholders excepting Whitaker and Matthews have surrendered their bonds to the complainant for cancellation. There is no showing that the defendants Whitaker and Matthews have ever, until a short time before the institution of this suit, asserted any claim or right to an enforcement of the provisions of the deed of trust in question. If they had not threatened to sell, and actually caused the complainant's property to be advertised for sale (as it appears from

the averments of the bill they have done), complainant would not have been disturbed in its rights, and would have had no occasion to resort to a court of equity for relief. Until the defendants asserted some right adverse to the complainant, the complainant could confidently repose upon its undisturbed possession, notwithstanding the illegal transactions complained of. There was, therefore, no occasion to resort to a court of equity for the relief prayed for in this case. Certainly not, so far as relates to the restraining order against defendants, until they began proceedings, or threatened proceedings, to assert some right under the void deed of trust. So far, therefore, as the injunctive relief is concerned, there can be no complaint on the ground of laches. It is held, in the case of Ruckman v. Cory, 129 U. S. 387, 9 Sup. Ct. 316, that laches cannot be imputed to one in the peaceable possession of land under an equitable title for delay in resorting to a court of equity for protection against the legal title, since possession is notice of his equitable rights, and he need assert them only when he finds occasion to do so.

In my opinion, the bill discloses a meritorious cause of action in favor of the complainant, notwithstanding any and all objections which were made to it in the argument of the demurrer in this case. Accordingly, the demurrer must be overruled.