SYNNOTT v. TOMBSTONE CONSOL. MINES CO., Limited, et al.

(Circuit Court of Appeals, Ninth Circuit.   October 29, 1913.)

No. 2,263.

1. BANKRUPTCY (§ 314*)—CLAIMS PROVABLE—NATURE OF LIABILITY.

Bonds issued by a corporation by which it agreed to pay their face value, with interest, out of certain funds created from the net surplus earnings of the company, on the back of which were provisions as to the creation of such funds from the earnings of the company, and the payment of the bonds therefrom, and that the obligation thereby created was solely against the company as such, and only against the funds mentioned, except that in the event of liquidation or dissolution the obligation should attach to all the funds and assets of the company, and a covenant by the company that such bonds as a unit should be deemed, in accordance with such provisions, to control the title of all the property of the company, which thereby acknowledged that it held all its rights, interest, or title to such property subject to such provisions, were not provable against the company in bankruptcy, where there had never been any surplus earnings, and as a consequence the funds in question had never been created, since there was no fixed liability of the company to the holders of the bonds, and any lien arising out of the provisions on the back of the bonds was limited to the earnings, as there could be no lien to secure something for which no liability existed.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 469–473, 478, 483–487, 489, 490; Dec. Dig. § 314.*]

2. BANKRUPTCY (§ 314*)—CLAIMS PROVABLE—NATURE OF LIABILITY.

A debt to be provable in bankruptcy must be a fixed liability absolutely owing at the time the petition in bankruptcy is filed.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 469–473 478, 483–487, 489, 490; Dec. Dig. § 314.*]

On petition for rehearing.   Denied.

For former opinion, see 207 Fed. 544.

Adams & Blinn and Amos L. Taylor, all of Boston, Mass., and Doan & Doan, of Douglas, Ariz. (Thomas E. Hayden, of San Francisco, Cal., of counsel), for appellant.

Everett E. Ellinwood and John M. Ross, both of Bisbee, Ariz., for appellee.

Before GILBERT and ROSS, Circuit Judges.

ROSS, Circuit Judge.   The petition for a rehearing in this case calls attention to the fact that, although the terms of the bonds in question were not printed in the transcript, the bonds were, under stipulation of the respective parties, forwarded to the clerk of this court, and are on file in his office.

[1] An inspection of them shows that they were issued under and by virtue of a resolution of the board of directors of the Tombstone Consolidated Mines Company, Limited, authorizing "the issuance and sale of a series of special contract bonds which shall not exceed, at par, the aggregate sum of three million dollars ($3,000,000)," each one of which recites upon its face that for value received the company—

"agrees to pay to the registered holder of this special contract bond, which is of the above series and issue, and is of the par value of one hundred ($100)

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

dollars, the face value hereof in gold coin of the United States of America, of the present weight and fineness, or its equivalent, and is payable in twenty equal installments, represented by the attached coupons, from and out of a retirement fund, created from the net surplus earnings of the company as hereinafter stipulated, at the times and upon the terms and conditions hereinafter stated, but not otherwise; also that the company agrees to pay to the registered holder hereof, in like gold coin from an interest fund created from the net surplus earnings of the company, as hereinafter stipulated and not otherwise, interest on the face value of this bond, or so much thereof as may from time to time remain unpaid, at the rate of six per centum per annum payable semiannually in equal installments on the first days of January and July in each year before any dividends are paid on the stock of the company."

Indorsed upon the back of each bond, and expressly made a part thereof, are the following provisions:

"This special contract bond (hereinafter referred to as bond), as well as all others of the same series, is authorized, sold, and issued by the Tombstone Consolidated Mines Company, Limited (hereinafter referred to as the company), and has been purchased and accepted by the holder hereof, for himself and assigns, subject to the following terms and conditions; that is to say:

"Clause I. The net proceeds derived from the sale of this and other bonds of the same issue shall be held in the treasury of the company, or be strictly applied by the company to the purchase of any or all of the properties and mining claims at Tombstone, Arizona, now under contract by it, and independently or with some separate company organized for such purpose, to the cost of construction, maintenance, or control of a railroad to be used in connection with said properties, or to the purchase of stocks or bonds in such a railroad company, all as the board of directors of the company may or may not deem advisable, and to the acquisition of such other mining claims and properties as the company may decide to secure, and to the purchase, installation, and maintenance of suitable mining and milling machinery, for the development and operation of all such properties as are now under contract, or hereafter may be acquired or controlled in connection with the business of the company, and to all legitimate and reasonable expenditures in connection therewith, or for any other purpose or object for which the company was incorporated, whenever such expenditures shall have been first approved by the company, and for such other purpose or object only.

"Clause II. Out of the earnings of the company the board of directors or executive committee shall create and maintain certain special funds for the particular uses and held under the particular names as hereafter in this clause set forth, to wit:

"(a) An operating fund, for carrying on the current business of the company, which, in the opinion of the board or committee, shall be sufficient for such purpose, but shall not exceed at any one time the sum of three hundred thousand ($300,000) dollars.

"(b) An interest fund, which, in the opinion of the board or committee, shall be sufficient to promptly meet and pay the semiannual interest payments on all bonds outstanding and unpaid, but which fund shall not exceed at any one time the sum of ninety thousand ($90,000) dollars; it being hereby expressly agreed and understood that no payment of interest is promised or shall be made hereunder, except from and out of the interest fund, in this clause named, and that said fund shall be created and maintained solely from the surplus earnings of the company as herein set forth and not otherwise.

"(c) A retirement fund, from which shall be paid from time to time the installment coupons attached to all bonds issued and sold, and to which shall be transferred all net surplus earnings of the company not required for the creation and maintenance of the special funds hereinbefore named, or for the payment of dividends upon the stock of the company, which stock dividends shall not be cumulative, and shall not exceed four per centum per annum, un-

til such time as all bonds issued by the company shall have been paid and redeemed.

"Clause III. The earnings of the company, under the supervision and within the judgment and discretion of the board of directors or executive committee, shall be used, paid, and applied for the following purposes, but only in the order herein in this clause stated; that is to say:

"(a) All current expenses of the company shall be paid or provided for, and the operating fund at all times be kept as nearly unimpaired as the earnings of the company will permit.

"(b) All earnings yet remaining shall be used and applied to the payment of all interest installments, due on all bonds outstanding and unpaid, and to keep the interest fund for such purpose at all times as nearly unimpaired as the earnings of the company available for such purpose will permit. The interest on this, and all other bonds of like issue, shall be cumulative and shall be payable semiannually, on the first days of January and July of each year, at the rate of six per centum per annum on their par value, or any unpaid portion thereof. Should the surplus or net profits arising from the business of the company and available for the interest fund herein named according to the terms of this agreement, prior to any interest day, be insufficient to pay the interest then due on this and other bonds of the same series, such interest shall be payable from future profits available for and in such fund, and no dividend shall at any time be paid upon the stock of the company, until the full amount of interest at the rate of six per cent. per annum, up to that time, upon the par value of all bonds, outstanding and unpaid, shall have been paid, or set apart for payment.

"(c) All earnings of the company yet remaining may, within the discretion of the board or committee, be used in the payment of dividends on the stock of the company, but at a rate of not to exceed four per centum per annum, which stock dividends shall not be cumulative, and shall not exceed the limit herein named until all bonds issued and outstanding, with accrued interest, shall have been fully paid, as herein provided.

"(d) All earnings of the company still remaining shall be transferred to the retirement fund, and whenever the cash on hand in said fund shall equal one-twentieth of the face value of all bonds then outstanding and unpaid, the company shall promptly pay and retire one of the installment coupons of this bond and one of the installment coupons of all other bonds of this series then outstanding and unpaid. Whenever a sufficient sum shall have accumulated in said retirement fund for such purpose, written notice thereof shall be promptly mailed to all registered holders of outstanding bonds, according to the last address given and shown by the books of the company, the sum necessary to retire one installment coupon on each of the said outstanding bonds shall be deposited with the Manhattan Trust Company of New York City, or with its successor or successors in the trust (hereinafter called the trust company), in trust for and subject to the order of each of such registered holders, and each of such installment coupons shall be paid, upon presentation and surrender, at the offices of the trust company, and interest upon so much of each of said bonds as the amount deposited will redeem and pay shall cease from and after ten days subsequent to the mailing of said notice. Upon surrender of said coupons, they shall be canceled by the trust company, and the payment thereof shall to such extent constitute a payment of this and other outstanding bonds of the same series and issue. All moneys so deposited for the payment of such coupons shall be held by the trust company at the risk of the holder of this and other like bonds, from and after the expiration of ten days subsequent to the mailing of such notice. The company, in lieu of depositing such funds with the trust company as herein provided, shall have the right, upon the giving of proper written notice, to make direct payment of such coupons out of the retirement fund of the company, at its offices in New York City, or Prescott, Arizona, and with like effect, as if paid through the trust company. The determination of the board of directors or executive committee with reference to the application, use, distribution, and payment of the earnings of the company, as in this

clause indicated, when made in good faith, shall be conclusive and binding upon the holders of all bonds, issued, outstanding, and unpaid.

"Clause IV. The company reserves the right to retire all bonds, issued and outstanding, at any interest paying date after June 1, 1902, by the payment of the full face value of such bonds, together with all accrued and unpaid interest at the rate of six per centum per annum up to such time. Provided, the company shall not exercise this right of redemption as to any number of bonds less than the whole number then issued, outstanding, and unpaid. Provided, further, that notice of the company's desire to retire such bonds shall be mailed to the registered holder of the same at least thirty days before the interest date fixed for such retirement; also, that the company has deposited at the same time with the trust company, at its offices in New York City, or holds for such specific purpose in the retirement fund of the company, a sufficient sum to meet and pay all of the said bonds, or any amount remaining due thereon. After such date, if such notice shall have been given, and if a sufficient deposit of money has been made, or is so held, as herein required, such notice and deposit or holding shall constitute a full payment of this bond, and of all other bonds of like issue, and all interest thereon from such time shall cease, and the money so placed with the trust company, or held in the retirement fund of the company, shall thereafter be held at the risk of the holder of this, and of all other bonds of like issue.

"Clause V. In the event of liquidation or dissolution of the company, all bonds outstanding and unpaid shall be paid in full, both as to principal and accrued interest thereon, at the rate of six per centum per annum, before any distribution is made of any of the assets of the company to the holders of the stock of the company.

"Clause VI. It is further agreed that the company will not execute, sign, or deliver any mortgage, deed of trust, conveyance, lease, release, or waiver, or other instrument which shall, subject to the terms and conditions of this agreement, be prior to or in any way give a preference as against or over the rights of the holder of this bond or of any other bond of like issue.

"Clause VII. It is expressly agreed and understood by the holder of this bond that the obligation hereby created is solely against the company as such, and is only against the retirement fund created from the surplus earnings of the company, as hereinbefore stipulated. Provided that, in the event of liquidation or dissolution of the company, the obligations of this bond shall immediately extend and attach to all the funds and other assets of the company whatsoever; as in clause V of this instrument, above stipulated and set forth. The company further covenants and agrees that the total bonds of this issue outstanding at any time, and as a unit, shall be deemed and taken, subject to and in accordance with the conditions hereinbefore set forth, to control the title to all the property of the company, real and personal, and of every kind and nature, and for the enforcement thereof the company hereby declares and acknowledges that it holds all its rights, interests, or title in and to any and all real and personal property, of every kind and nature whatsoever, now held or which may be hereafter acquired by it, subject to and in accordance with the aforesaid conditions, and that the company has caused a copy of this special contract bond to be duly filed and recorded in the county of Cochise, territory of Arizona, in which the properties of the company are situate.

"Clause VIII. This bond is authorized, sold, issued, purchased, and accepted upon the terms and conditions hereinbefore stated, and none other, and no officer, agent, or other representative of the company shall have the power to waive or modify any provision or condition of this agreement, or to add any other provision or condition thereto."

[2] We are of the opinion that the court below was clearly right in its ruling that the instruments in question were not provable against the estate of the bankrupt corporation, for the reason that they created no fixed liability against it. The law is that a debt to be provable in bankruptcy must be a fixed liability absolutely owing at the time the

petition in bankruptcy is filed. Bankruptcy Act, § 63; In re Neff, 157 Fed. 57, 84 C. C. A. 561, 28 L. R. A. (N. S.) 349; County Com'rs v. Hurley, 169 Fed. 92, 94 C. C. A. 362; In re Adams (D. C.) 130 Fed. 381; Collier on Bankruptcy (8th Ed.) pp. 701, 706; Id. (9th Ed.) pp. 854, 867.

The instruments in question expressly declare on their face that both the principal and interest are payable only out of certain named funds to be created out of the surplus earnings of the company, and any lien that ever could arise out of the provisions indorsed on their back was necessarily limited to such surplus earnings, for manifestly there could be no lien to secure something for which no liability existed. The case showing that there never were any surplus earnings of the company, and that, as a consequence, the funds out of which the instruments expressly declared both principal and interest thereof was only payable were never created, we regard it as too clear for argument that there has never been any fixed liability of the company in question absolutely owing to the holders of any of the so-called bonds. The marvel to us is that such instruments with such terms and conditions could have found a purchaser other than such persons as were willing to take chances on a mining venture, such as this project evidently was in its every feature.

The petition for a rehearing is denied.