### WILLIAMSON v. COLLINS et al.

(Circuit Court of Appeals, Sixth Circuit.   July 5, 1917.   On Request for Further Opinion, August 6, 1917.)

Nos. 3020–3022, 3038–3042.

1. RECEIVERS ⬤⟹170—ACTIONS—DEFENSES.
    Where one seeking to intervene in a suit in which a receiver was appointed for a corporation, and to contest the validity of bonds of the corporation, was concededly a creditor against whose claim there was no defense, the court was justified in directing the receiver to facilitate rather than hinder the rendition of a judgment in its favor, so as to give it the standing of an unsatisfied judgment creditor.

2. EQUITY ⬤⟹35—ANCILLARY JURISDICTION—BONDS—DETERMINATION OF VALIDITY.
    A minority stockholder in a corporation also holding its bonds filed a bill on behalf of all stockholders to annul a deed of assignment which the controlling stockholder had procured to be executed to himself, and for a determination of the status of the bonds which such controlling stockholder and others were contending to be invalid, and a receiver was appointed. A judgment creditor intervened and filed a petition contesting the bond issue. Plaintiff then filed a supplemental bill asserting the validity of the bonds, and praying for a determination, and the answering bondholders also sought a determination of the validity of the bonds as incidental to the setting aside of the assignment. *Held*, that the court, having properly obtained jurisdiction and control of the corporation and its properties, had power to determine the rights of the bondholders as against the corporation and its property and as between themselves, especially in view of the negotiable character of the bonds, and the serious damage that would result to the company if, while invalid in the hands of the original holders, they should be transferred to holders in due course.

---

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. CORPORATIONS ☜480½—BONDS—RIGHTS OF BONA FIDE HOLDERS.

Under the rule in Ohio, holders in due course of bonds of a corporation secured by a mortgage were entitled to have the lien of the mortgage preserved for their benefit, though the bonds were not good as between the original parties, and were entitled to an equality with other creditors as against assets not covered by the mortgage.

4. ATTORNEY AND CLIENT ☜103—ACTS OF ATTORNEY AS BINDING CLIENT.

Where the attorney charged with the organization of a corporation had the stock actually paid for in cash, and had bonds issued to the stockholders in an amount equal to their stock as a bonus, the stockholders, all of whom had full knowledge of the purpose and the means taken to effectuate it, were bound by his acts, though the purpose would better have been accomplished by paying for the bonds and having the stock issued as a bonus.

5. CORPORATIONS ☜476(3)—BONDS—RIGHTS OF HOLDERS.

Stockholders in a corporation to whom bonds were issued in an amount equal to the amount of their stock as a bonus had no standing as creditors of the corporation in any true sense of the word or in competition with other creditors.

6. CANCELLATION OF INSTRUMENTS ☜4—GROUNDS—INVALIDITY OF INSTRUMENT.

Where bonds were issued to stockholders in a corporation as a bonus, the corporation was entitled to the aid of a court of equity so that it might not be deprived of its defense of want of consideration through the negotiation of the bonds to holders in due course.

7. CORPORATIONS ☜482½—BONDS—RIGHTS OF BONDHOLDERS.

Where, with the consent of all stockholders, and for the legitimate purpose of giving the minority stockholders some protection against the possible wrongdoing and mismanagement of the majority, bonds were issued to each stockholder as a bonus, the contract of the parties should be given the utmost effect permissible under the law; and, while the bondholders could not compete with creditors or subject the capital of the company to their claims, they were entitled to dividends payable out of surplus, and to a redemption of the principal out of the surplus at maturity, and to have the agreed sinking fund created so far as it could be done out of the surplus, and in subordination to the rights of bona fide purchasers of the bonds and on liquidation of the company they were entitled to have the remaining capital, after creditors had been satisfied, devoted to the redemption of the bonds.

8. CORPORATIONS ☜476(3)—BONDS—RIGHTS OF BONDHOLDERS.

Such bondholders were not, however, entitled to have the mortgage securing the bonds sustained as a lien in their favor, as such lien would jeopardize the fund as to which the creditors had priority.

9. CORPORATIONS ☜479—BONDS—BONA FIDE PURCHASERS.

Where bonds were issued as a bonus to the stockholders in a corporation, a stockholder who, because of the bond issue, increased her stock subscription, was not a bona fide holder of the bonds.

10. CORPORATIONS ☜479—BONDS—BONA FIDE PURCHASERS.

One who was paid in stock for his services in promoting the company, and who received bonds not as a part of his agreed compensation, but merely because the other stockholders were receiving them, as a bonus, was not a bona fide holder.

11. CORPORATIONS ☜417—COMPROMISE AND SETTLEMENT—PERSONS CONCLUDED.

Where bonds were issued to the stockholders in a corporation as a bonus, and a party receiving stock in payment for his services in promoting the company was compelled to sue the controlling stockholder for possession of his stock and bonds, and compromised by giving up a part of the bonds, the settlement did not estop the company and the other stockholders to deny his rights as a bona fide purchaser of the bonds, especially

as the only issue was the right of compensation and ownership of the stock and bonds and not their validity as against the company or its creditors.

12. INTEREST ⟵38(2)—RATE OF INTEREST ON JUDGMENTS.

Under Gen. Code Ohio, § 8304, providing that upon all judgments, decrees, or orders rendered on any bond or other instrument in writing, containing stipulations for the payment of interest, interest shall be computed until payment at the rate specified in such instrument, where stockholders, to whom bonds were issued as a bonus, transferred them to holders in due course, a personal judgment against them in favor of the company for the amount of the bonds would bear interest at the rate specified in the bond.

13. CORPORATIONS ⟵479—BONDS—INVALIDITY—LIABILITY OF HOLDERS.

Where persons to whom corporate bonds were issued as a bonus, with full knowledge of all the facts constituting the company's defense as to them, transferred the bonds to bona fide holders, their liability to the company was not limited to the amount received by them on the sale of the bonds, but extended to the face of the bonds and the matured coupons.

14. CORPORATIONS ⟵522—BONDS—INVALIDITY—LIABILITY OF HOLDERS.

Enforcement of the judgment against such bondholders should be conditioned upon their failure to furnish good security for the repayment to the company of such sums as it might pay on the bonds, and where the original holders of such bonds, though not having the rights of creditors, had rights analogous to that of the first preferred stockholders entitled to cumulative dividends payable out of surplus, and to a redemption of the principal out of surplus, provision should likewise be made for delivering the bonds to the original holders when paid or redeemed, or on payment of the judgment.

15. CORPORATIONS ⟵479—BONDS—RIGHTS AND REMEDIES OF HOLDERS.

Where stockholders in a corporation to whom bonds were issued as a bonus sold the stock and bonds together for an agreed price, representing that the bonds were valid and that the stock was a bonus, and the company subsequently recovered judgment against them for the amount of the bonds, they were not entitled to reimbursement from their vendees, though their vendees in addition to having bonds valid in their hands also gained an unexpected exemption from possible stock liability.

16. CORPORATIONS ⟵550(10)—ASSIGNMENTS FOR CREDITORS—RIGHTS OF ASSIGNEE.

The controlling stockholder in a corporation who took a deed of assignment from the company, which was subsequently set aside, was entitled to reimbursement upon payment of its debts incurred by him where the company received the full benefit.

17. APPEAL AND ERROR ⟵984(5)—REVIEW—DISCRETION—ALLOWANCE OF COSTS.

In a suit by minority stockholders in a corporation to set aside a deed of assignment taken by the controlling stockholder from the company, and to have a determination of the validity of bonds issued by the company, the trial judge's discretion in allowing fees to plaintiff's solicitor against the company instead of the controlling stockholder was not reviewable.

On Request for Further Opinion.

18. CORPORATIONS ⟵480—MORTGAGES—RIGHTS OF BONDHOLDERS.

Where, with the consent of all stockholders, and for the legitimate purpose of giving the minority stockholders some protection against the possible wrongdoing and mismanagement of the majority, mortgage bonds were issued to each stockholder as a bonus, the bonds, though subordinated to the rights of creditors, had priority, not only over the original common stock, but over a subsequent issue of preferred and common stock.

⟵For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Western Division of the Southern District of Ohio; Howard C. Hollister, Judge.

Suit by Frances H. Williamson against Justus Collins and others. From the decree the plaintiff and the defendants Nannie H. Wright, D. Gregory, Wright, M. L. Sternberger, Jr., Daniel J. Herbert, the Commercial Bank of Jackson, S. E. Sternberger, and Elizabeth M. Dickinson appeal. Reversed and remanded.

Murray Seasongood, of Cincinnati, Ohio, for appellant Williamson.

Lawrence Maxwell and Murray Seasongood, both of Cincinnati, Ohio, for appellants Wright.

Edward P. Moulinier, of Cincinnati, Ohio, for appellants Herbert and others.

David Lorbach, Harry L. Gordon, Walter M. Schoenle, and Rufus B. Smith, all of Cincinnati, Ohio, for appellees.

Before KNAPPEN, MACK, and DENISON, Circuit Judges.

MACK, Circuit Judge. On a former appeal this court affirmed the order of the District Court avoiding a deed of assignment, which Justus Collins, the president of the Superior Portland Cement Company (hereinafter called the Cement Company), had caused it to make to himself. 229 Fed. 59, 143 C. C. A. 653. His purpose had been to free the company in this way from a bond issue of $525,000. As the successive phases of the company's organization and career were reviewed on the earlier appeal and as the former record, with some supplementary testimony, is the basis of the decree now sought to be reversed, a summary review of the facts, more fully set forth in the former opinion, will suffice.

The Cement Company was organized in 1906 with a capital stock of $10,000, promptly increased in accordance with the original plans to $525,000. The land on which its plant is situated was purchased from Mrs. Nannie H. Kelley (who subsequently became Mrs. Wright), appellant in No. 3021, for $100,000. Of this sum, $10,000 was to be and was given to Mr. D. Gregory Wright, appellant in No. 3022, the promoter of the company, who turned it into the treasury for working capital. Originally Mrs. Wright had subscribed for $25,000 of the capital stock, but, when the bond issue and its pro rata distribution among the stockholders were proposed, she increased her subscription to $50,000. M. L. Sternberger, since deceased, became interested in the project and finally invested $75,000. From the beginning, however, he stated that he was willing to subscribe only on the condition that the investment of the minority stockholders be represented by such a bond issue. Appellee Collins subscribed for 2,669 shares, and with the holdings of his relatives, he has had the controlling interest in the company continuously since its organization. Eugene Zimmerman, since deceased, acquired 325 shares; Frances Williamson, appellant in No. 3020, a sister of Nannie H. Wright, 100 shares; D. Gregory Wright received for his services in promoting the company 250 shares. All of the parties expected to and did receive bonds in an amount equal to the stock subscribed by them pursuant to their agreement, except that D. Gregory Wright eventually received only $20,000 bonds with his $25,000 stock. Sternberger's attorney, Joseph McGhee, acted for the company. On his advice that it was necessary to show a consideration

for the bonds, the parties acquiesced in his plan that the apparent consideration to be paid Mrs. Kelley be $525,000 in bonds in addition to the $100,000 in cash. They knew, however, that this was a purely fictitious consideration.

The bonds were secured by a trust deed in the nature of a mortgage to the Provident Savings Bank & Trust Company; they were to mature July 1, 1936; and bore interest at the rate of 5 per cent. per annum, payable semiannually, evidenced by interest coupons. The trust deed provided for the payment to the trustee of five cents per barrel as a sinking fund, for the payment or redemption of the bonds, on every barrel of Portland cement manufactured by the Cement Company. . But no payments have ever been made toward such a fund.

In October, 1907, in order to raise needed funds, the company issued 500 shares of preferred stock and offered them at par, together with a bonus of 250 shares of common stock, pro rata to the stockholders other than D. Gregory Wright. As some stockholders, including Mrs. Wright and Mrs. Williamson, declined the offer, Collins took $19,400 of the issue, and Sternberger and his friends $31,600. Mrs. Wright and Mrs. Williamson refused to put more into a project controlled by Collins, especially in view of his action in withholding from D. Gregory Wright his stock and bonds and compelling him to sue therefor.

On account of the heavy bond issue, the company was unable to obtain necessary credit. Collins and others were compelled to indorse its paper. To avoid this, and to better the company's condition, Collins and his friends stood ready to surrender and cancel their bonds if the entire issue were canceled; the Wrights and Mrs. Williamson refused to give up their position of mortgage secured creditors having priority over the preferred stock issue. Thereupon Collins, in the hope of freeing the company in some manner from this lien, and with the consent of three-fourths of the stockholders, had the deed of assignment executed to himself.

The original bill filed by Mrs. Williamson as a minority stockholder, on behalf of all stockholders as well as on behalf of the company, sought an annulment of this deed and a determination of the status of all the bonds. After the affirmance of the earlier decree, the Sturtevant Mill Company, which theretofore, as a simple contract creditor, had sought to file an intervening petition, obtained a judgment against the Cement Company and an immediate return nulla bona. As the receiver, after investigating the merits of the claim, acquiesced therein, it then filed an intervening petition to contest the entire bond issue. The plaintiff, reciting that she acted "by direction of the court," filed a supplemental bill asserting the validity of the bonds held by her and others, alleging defendants' contention that their own bonds were invalid, and praying for a determination of the conflict as well as general relief. By answer, a number of defendants claimed to be bona fide purchasers of the bonds without notice of the facts on which the claim of their invalidity was based. Intervening petitions were presented by other creditors. By final decree, the trust deed and the bonds secured thereby were held without consideration, void, and invalid both as against creditors of the Cement Company, and as against the

Cement Company itself, except as to certain innocent purchasers from the original holders; judgments for the face value of the bonds and all past-due interest coupons thereon were rendered against the original holders who had sold their bonds to these innocent purchasers; all other bonds and coupons were directed to be delivered up for cancellation within a specified time under penalty of judgment against the holders for the face of the bonds and the coupons not surrendered. Creditors of the Cement Company, including on an.equality those who had given credit to Collins as assignee conducting the business of the company and innocent bondholders, in respect of the matured coupons, were directed to be paid. Plaintiff's attorney was awarded $2,500 payable out of the funds in the hands of the receiver.

[1, 2] 1. All parties in interest, stockholders, bondholders, trustee, and creditors, were before the court, both on the original and supplemental bill and on the intervening petition. As the intervening petitioner was concededly a creditor against whose claim there was no defense, the court was justified in directing the receiver to facilitate rather than to hinder rendition of a judgment in its favor so as to give it the standing of an unsatisfied judgment creditor. But it is unnecessary to determine whether, on the intervening petition alone, the court should have limited its action to satisfying the creditors' claims without determining the rights of the bondholders inter sese or as against the company itself when freed of debts. For under the original and supplemental bill and the answers thereto all parties sought a determination of these matters as incidental to the setting aside of the assignment. The court had properly obtained jurisdiction and control of the Cement Company and of all of its properties; it was clearly within the power of a court of equity, under the circumstances, to fix the rights of the parties, both as against the company and its property, and, in relation thereto, as between themselves. Especially is this true in view of the negotiable character of the bonds, and the serious damage that would result to the company if, while invalid in the hands of the original holders, they should become valid by transfer to holders in due course. Thompson v. Emmett Irrig. Co., 227 Fed. 560, 142 C. C. A. 192.

[3] 2. Holders in due course of these bonds concededly have enforceable claims against the company. Cromwell v. County of Sac, 96 U. S. 51, 24 L. Ed. 681. As to assets not covered by the mortgage, they were properly placed by the decree on an equality with other creditors in so far as their coupons had matured.

In Ohio, the innocent holders of a corporate bond issue, payable to bearer and intended for general circulation, may enforce the lien of the mortgage security free from defenses which would be good as between the original parties; the mortgage lien follows as an incident of the negotiable character of the bonds. Railway Co. v. Lynde, 55 Ohio St. 23, 52, 44 N. E. 596.

These holders have not appealed from the decree, but as neither the language of the decree nor of the opinion accompanying it indicates clearly the measure of protection intended to be given to them, and as a modification of the decree in other respects will be essential, the new

decree will specifically preserve the lien of the mortgage in favor of these bona fide bondholders, both as against the company and as against its creditors, present and future.

3. In the course of the former opinion of this court it was said:

"That the outstanding bonds were a menace to the life of the corporation, that they were issued as an inducement to procure stock subscriptions and as a bonus without the payment of any consideration for them, is too manifest to admit of controversy; but what the rights of the holders as between themselves, and as between themselves and company, may be, and as to what method is to be pursued to determine such rights, and cancellation and return of them to the company, if it shall ultimately be decided that such shall be done, are matters which we are not now called upon to decide."

These matters, which were then expressly left open, must now be determined.

[4] Whether or not the attorney failed to carry out the intention of the parties in having the stock not merely issued as full paid, but actually and specifically paid for in cash, is beside the question. He was charged with the organization of the company; the parties, all of whom had full knowledge both of the purpose and of the means taken to effectuate it, are bound by his and their own acts.

It may well be that a payment for the bonds and the issuance of the stock as bonus would better have accomplished Sternberger's original proposition of giving the minority stockholders the protection of a full-paid investment. But the evidence clearly demonstrates that the bonds were the bonus; they were issued only after the stock calls had been paid; no consideration was given for them to the company itself; the pretended consideration in treating them as part payment for the land was concededly a pure fiction, to the knowledge of all parties.

[5, 6] As creditors, therefore, in any true sense of the word, these bondholders have no standing; as against them, the corporation could plead no consideration; in competition with its actual creditors, present or future, they have no rights; and the corporation for its protection, to enable it to pay its debts and to transact its business, is entitled to the aid of a court of equity so that it may not be deprived of its defense through the negotiation of these evidences of an obligation unenforceable by the original parties, though valid when acquired by a holder in due course.

[7] But while the original bondholders are not creditors in the full sense, nevertheless as the transaction in question was entered into with the consent of all the stockholders for the legitimate purpose of giving minority holders some protection against the possible wrongdoing and mismanagement of the majority, the contract of the parties should be given the utmost effect that may be permissible under the law. While they cannot compete with creditors, and therefore while the company is a going concern cannot subject the creditors' fund, the capital of the company, to their claims, yet, subject to this limitation, their contractual rights can and should be enforced. In practical effect, they are in a position analogous to that of first preferred stockholders (see In re Fechheimer Fishel Co., 212 Fed. 358, 129 C. C. A. 33), entitled to cumulative dividends payable out of surplus, and to a redemption of the principal out of surplus on and after July 1, 1936, but in both cases

without impairment of fixed capital. Furthermore, they are entitled to a performance of the contractual obligation to create a sinking fund by the payment of five cents on each barrel of cement manufactured, subject, however, again to the limitation that such payment be made only out of surplus without impairment of fixed capital, and that it be subordinate to the rights of the bona fide purchasers to the sinking fund as provided in the trust deed. And in the event that the company should be liquidated before the payment in full of the bonds and the interest thereon, then on such liquidation, after all of the creditors shall have been satisfied, the remaining capital should first be devoted to the bond redemption.

In substance, all of the company's funds which could be legally devoted to the payment of dividends, and, on liquidation, to distribution among stockholders, are to be first applied to these bondholders' claims. To this extent the agreement entered into by all the stockholders on behalf of the company can be legally carried out. And inasmuch as there is nothing inherently illegal in the contract or its purpose, the company's defense to its full enforcement presents no obstacle to the grant of this relief. See Cratty v. Peoria Library Association, 219 Ill. 516, 76 N. E. 707, cited in 46 L. R. A. (N. S.) 639, note; McKee v. Title Insurance & Trust Co., 159 Cal. 207, 113 Pac. 140; 1 Cook, Corporations, § 3. In Germania Trust Co. v. Boynton, 71 Fed. 797, 19 C. C. A. 118, and in Rolapp v. Railroad, 37 Utah, 540, 110 Pac. 364, rights of creditors were involved. In Gunnison Gas & Water Co. v. Whitaker (C. C.) 91 Fed. 191, the bonds were made absolutely void by the state Constitution. Moreover, they were not delivered as existing obligations, but were wrongfully retained by the agent to whom they had been delivered for the purpose of effecting a sale. Inasmuch as the corporation involved was a public service company, and not, as in the instant case, a private corporation, the rights of the public were deemed by the court to be jeopardized by the transaction. In Morrow v. Iron & Steel Co., 87 Tenn. 262, 10 S. W. 495, 3 L. R. A. 37, 10 Am. St. Rep. 658, the subscribers to the stock other than plaintiff abandoned the original plans before the bonds were delivered. Under these circumstances, the court properly refused to direct the issuance of bonus bonds to plaintiff. It is unnecessary for us to express an opinion on the further action of the court in refusing plaintiff the alternative remedy of a cancellation of his notes given in payment of his stock and bonus bonds subscription, as no such question is involved in the instant case.

These bonds, with the rights thereunder, hereinabove set forth, are somewhat analogous to income bonds, which are not uncommon in this country (Texas Ry. v. Marlow, 123 U. S. 687, 8 Sup. Ct. 311, 31 L. Ed. 303; 2 Machen, Corporations, §§ 2100–2110); to the English irredeemable debentures (Palmer, Company Law [10th Ed.] p. 313; 3 Palmer, Company Precedents, p. 56; but see Lindley, Companies [6th Ed.] p. 303); and especially to the bonds payable only out of profits, dealt with in Famatina Development Corporation v. Bury, 1910, A. C. 439. While in Synnott v. Tombstone Consolidated Mining Co., 208 Fed. 251, 125 C. C. A. 451, bonds payable both as to principal and interest, only out of profits, were held not provable in bankruptcy in

competition with creditors, their validity was not questioned. See, too, Philadelphia & Reading R. R. v. Stichter, 11 W. N. C. 325, 4 Amer. & Eng. R. R. Cases, 118 (Pa. Sup. Ct.); but see Taylor v. Philadelphia & Reading R. R. (C. C.) 7 Fed. 386.

[8] The mortgage, however, cannot be sustained as a lien in favor of the original bondholders. As in Miller, Exec., v. Ratterman, 47 Ohio St. 141, 159, 24 N. E. 496, it is difficult to say what office such a mortgage for their benefit could have. As the property covered thereby constituted an essential part of the company's capital, such a lien thereon would jeopardize the fund as to which all creditors have priority. The decree, therefore, properly preserved the lien of the mortgage only in favor of the holders of the bonds acquired in due course.

[9, 10] 4. Neither Mr. nor Mrs. Wright is a holder in due course. It is a fiction to assert that the land was sold for $40,000 or $50,000 cash, together with $50,000 par worth of both stock and bonds. Not only was the price of $100,000 fixed, but it was actually paid out in cash to the vendor. Her stock subscription, while doubtless made because of the sale, was entirely independent thereof. It may well be, too, that she increased her subscription because of the bond issue; but she went into the company as a stockholder and as a bondholder in exactly the same way as, and is therefore entitled to no better rights than, the other stockholder. D. G. Wright's promotion fee was fixed at $25,000 worth of the stock; this he eventually received full paid; but the bonds were no part of his agreed compensation. He was justly entitled to them only because the other stockholders received this bonus; he got them, however, as a bonus, not in payment for services.

[11] 5. Wright was compelled to sue Collins, who had possession of his stock and bonds, in order to get them, and at that he compromised by giving up $5,000 of the bonds to the company. This suit, however, was against Collins, not against the company; the settlement was with him; the company and the other stockholders were neither bound nor estopped thereby as Collins might be. But even at that, the only issue was the right of possession and ownership of the stock and bonds, not their validity as against either the company's creditors or the company itself. That action and the proceedings thereunder in no manner sustain Wright's contention. He is not a bona fide purchaser of the bonds.

[12] 6. The decree holds the original bondholders whose bonds have come into the hands of holders in due course liable to the company for the face of the bonds and the matured coupons. This personal judgment, having no express provision as to interest, will bear interest at the rate specified in the bond in accordance with section 8304 of the Ohio General Code.

[13] As the vendors, unlike the trustees of Rector College in Wilson v. Lazier, 11 Gratt. 477, acquired and disposed of the bonds, not in ignorance but in full knowledge of all the facts that constitute the company's defense as to them, their liability is not to be limited to the amount received by them on the sale of the bonds, even if this could be definitely determined when, as here, bonds and stock were sold together for less than their joint par value. But, like Rector in the case

of Wilson v. Lazier (see, too, Pettit v. Jennings, 2 Robinson, 676, and 27 L. R. A. 519, note), their liability in equity is to indemnify the company fully against loss due to their acts.

[14] If the bonds were now due and the company paid them, the judgment would be proper. But they may not mature until 1936; at that time it cannot be known whether the company will actually pay them or the interest thereon, and thus what, if any, loss, will result. Nevertheless, as the company's liability is absolutely owing, though not matured, the amounts of the judgments fixed in the decree are proper. Enforcement thereof should, however, be conditioned upon the failure to furnish good security from time to time for the repayment to the company of such sums as it may pay on the interest and principal of such bonds.

Provision should likewise be made that on such repayment the original bond or coupon so redeemed or, on payment of the judgment, a new bond of like effect, shall be delivered to the purchaser so repaying, to be held with the same rights thereunder as are accorded the other bonds in the hands of the original holders.

[15] 7. The claim of the vendors of these bonds to reimbursement, in whole or in part, from their innocent vendees, was properly denied. The bonds were represented to be valid; the stock was assumed to have been a bonus. But the sale was of the two together for an agreed price; that the vendee has acquired actually full-paid stock as well as a bond valid in his hands against the company gives the vendor no claim to counter indemnity because of his own liability to the company. While the vendee thereby gains an unexpected exemption from possible stock liability, that gain is not at the vendor's cost. Moreover, the vendor, under the decree to be entered, will be restored to his original rights in respect to the bonds, with priority over all stock issues, if and when he indemnifies the company against its liability on the bonds so sold by him.

8. There is no occasion at this time to consider whether the common stock given with the $50,000 preferred issue is within the principle of Handley v. Stutz, 139 U. S. 417, 11 Sup. Ct. 530, 35 L. Ed. 227, and Peters v. Union Mfg. Co., 56 Ohio St. 181, 46 N. E. 894, free from liability to creditors and to the company, or whether under Kiskadden v. Steinle, 203 Fed. 375, 121 C. C. A. 559, the liability thereon remains. For the company is not insolvent, now that most of the bonds are held not to be company debts, and it is not seeking any such relief against the holders of this issue of common stock.

[16] 9. Furthermore, in view of the solvency of the company, it is immaterial whether the debts incurred by Collins as assignee be allowed directly against the company or against Collins with a right of reimbursement to him. Clearly he had a right of reimbursement, inasmuch as the company received the full benefit of the consideration given for these claims. See Randolph v. Scruggs, 190 U. S. 533, 23 Sup. Ct. 710, 47 L. Ed. 1165.

[17] 10. The allowance of fees to plaintiff's solicitor is not contested; but it is urged that these should be charged against Collins and not against the company. Inasmuch, however, as the suit involved not only the validity of the assignment, but also the determination of

the status of the bonds, the discretion exercised by the district judge in this matter is not properly reviewable.

11. All bonds and coupons not belonging to holders in due course should be stamped in such manner as to give notice of the limitations thereon under the decree to be entered by the District Court on the remanding of this cause.

The decree will be reversed and the cause remanded for further proceedings in accordance with the views herein expressed. Costs will be taxed against the Cement Company.

### On Request for Further Opinion.

PER CURIAM. [13] Counsel for certain parties ask the court for an expression of opinion whether the $50,000 of preferred stock mentioned in the opinion heretofore filed, pursuant to the decision rendered June 30, 1917, "is to come ahead of or after the interest represented by those holding bonds for which nothing was paid."

The former opinion was intended to express, and is believed to express, the view that the entire bond issue has priority, not only over the original common stock, but over the subsequent issue of both preferred and common stock. This would seem clearly to follow from the statement, as to the bondholders, in that opinion, that "in practical effect they are in a position analogous to that of first preferred stockholders," and from the closing sentence of paragraph 7:

"Moreover, the vendor, under the decree to be entered, will be restored to his original rights in respect to the bonds, with priority over all stock issues, if and when he indemnifies the company against its liability on the bonds so sold by him."